UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KIMBERLY WILLIAMS,                )
                                  )   No. CV-06-0347-CI
          Plaintiff,              )
                                  )   ORDER GRANTING PLAINTIFF'S
v.                                )   MOTION FOR SUMMARY JUDGMENT
                                  )   AND REMANDING FOR AN
MICHAEL J. ASTRUE,                )   IMMEDIATE AWARD OF BENEFITS
Commissioner of Social            )
Security,                         )
                                  )
          Defendant.              )
                                  )

     BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.
Rec. 13, 17.)   Attorney Maureen Rosette represents Plaintiff;
Special Assistant United States Attorney Franco L. Becia represents
Defendant.    The parties have consented to proceed before a
magistrate judge. (Ct. Rec. 8.)  After reviewing the administrative
record and briefs filed by the parties, the court **GRANTS** Plaintiff's
Motion for Summary Judgment, and remands the matter to the
Commissioner for an immediate award of benefits.

**JURISDICTION**

     On November 16, 1999, plaintiff Kimberly Williams (Plaintiff)
protectively filed applications for disability insurance benefits
and Social Security Income benefits, respectively. (Tr. 179, 786.)
Plaintiff alleged disability due to back and neck pain, with an
onset date of October 10, 1999.  (Tr. 200.)  Benefits were denied
initially and on reconsideration.   (Tr. 89, 94.)    Plaintiff

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR IMMEDIATE AWARD OF BENEFITS - 1

requested a hearing before an administrative law judge (ALJ), which was held before ALJ Richard Hines on November 29, 2000. (Tr. 97, 801-844.)   Plaintiff, who was present with a non-attorney representative, testified. (Tr. 801.) The ALJ denied benefits on March 21, 2001, and the Appeals Council remanded the matter for additional proceedings on September 27, 2001. (Tr. 103.) A second hearing was held before ALJ Hines on May 23, 2002, at which Plaintiff and medical expert Glen Almquist, M.D., testified. (Tr. 845-46.)  Plaintiff was represented by an attorney.  The ALJ denied benefits on December 17, 2002, (Tr. 88), and the Appeals Counsel remanded the case again for further proceedings on February 27, 2004. (Tr. 137-39.)  Additional evidence was submitted and a third hearing was held on March 2, 2005, at which medical expert William Spence, M.D., testified. (Tr. 860-61.)  The case was reassigned to ALJ R.J. Payne, and a fourth hearing was held on June 17, 2005, at which medical experts Robert Stier, M.D., and Ronald Klein, Ph.D., testified. (Tr. 869-70.)  The fifth and final hearing was held on July 25, 2005.  Plaintiff, who was represented by counsel, and vocational expert Sharon Welter testified. (Tr. 894-931.)  ALJ Payne denied benefits on November 7, 2005, and the Appeals Council denied review.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here.  At the time of the last hearing, Plaintiff was 40 years old.  She had completed seventh grade and obtained her high-school equivalency degree.  She lived

with her spouse and seven-year-old child.  She also had a 24-year-old son.  (Tr. 897-99.)  She had past relevant work as a dietary aide, grocery bagger, cashier, flagger, and cannery worker.  (Tr. 899-905, 927.)  She testified she could not sustain work due to pain and fatigue and mental confusion.  (Tr. 905, 907, 922.)

### ADMINISTRATIVE DECISION

At step one, ALJ Payne found Plaintiff had not engaged in substantial gainful activity during the relevant time.  He found she was insured for benefits through December 31, 2004.  (Tr. 37.)  At step two, he found Plaintiff had the severe impairment of pain in her back, neck and hip, but determined at step three that it did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 31, 37.) The ALJ found Plaintiff's depression was not severe.  (Tr. 31-32.) He determined Plaintiff's subjective complaints regarding her functional limitations were not totally credible.  (Tr. 33.)  At step four, he determined Plaintiff had a residual functional capacity (RFC) for light exertion with some postural limitations and nonexertional limitations due to pain.  (Id.)  He found even with her medication, she would be able to "remain reasonably attentive and responsive in a work setting and would be able to carry out normal work assignments satisfactorily."  He found pain would not limit her ability to work.  (Id.)  The ALJ concluded Plaintiff could perform her past relevant work as a cashier, cannery worker, courtesy booth clerk and flagger.  (Tr. 35.)  Proceeding to step five and considering vocational expert testimony, he found alternatively that Plaintiff could perform other work in the

1  national economy and was therefore not disabled.  (Tr. 38.)

2  **STANDARD OF REVIEW**

3  In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

4  court set out the standard of review:

> A district court's order upholding the Commissioner's
> denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
> 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
> Commissioner may be reversed only if it is not supported
> by substantial evidence or if it is based on legal error.
> *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
> Substantial evidence is defined as being more than a mere
> scintilla, but less than a preponderance.  *Id.* at 1098.
> Put another way, substantial evidence is such relevant
> evidence as a reasonable mind might accept as adequate to
> support a conclusion.  *Richardson v. Perales*, 402 U.S.
> 389, 401 (1971).  If the evidence is susceptible to more
> than one rational interpretation, the court may not
> substitute its judgment for that of the Commissioner.
> *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
> Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility,
> resolving conflicts in medical testimony, and resolving
> ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
> Cir. 1995).  The ALJ's determinations of law are reviewed
> *de novo*, although deference is owed to a reasonable
> construction of the applicable statutes.  *McNatt v. Apfel*,
> 201 F.3d 1084, 1087 (9th Cir. 2000).

18  **SEQUENTIAL PROCESS**

19  Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

20  requirements necessary to establish disability:

> Under the Social Security Act, individuals who are
> "under a disability" are eligible to receive benefits.  42
> U.S.C. § 423(a)(1)(D).  A "disability" is defined as "any
> medically determinable physical or mental impairment"
> which prevents one from engaging "in any substantial
> gainful activity" and is expected to result in death or
> last "for a continuous period of not less than 12 months."
> 42 U.S.C. § 423(d)(1)(A).  Such an impairment must result
> from "anatomical, physiological, or psychological
> abnormalities which are demonstrable by medically
> acceptable clinical and laboratory diagnostic techniques."
> 42 U.S.C. § 423(d)(3).  The Act also provides that a
> claimant will be eligible for benefits only if his
> impairments "are of such severity that he is not only

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR IMMEDIATE AWARD OF BENEFITS - 4

unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR IMMEDIATE AWARD OF BENEFITS - 5

1   Plaintiff argues the ALJ improperly rejected the opinions of her
2   treating and examining physicians and erroneously relied on the
3   testimony of medical experts.  (Ct. Rec. 14 at 13, 15, 19.)

4                              **DISCUSSION**

5   **A.  Evaluation of Medical Evidence**

6        It is undisputed that Plaintiff bears the burden of proving she
7   is disabled by providing complete and detailed objective medical
8   evidence and evidence from other medical sources, of her condition
9   from licensed medical professionals and other sources.  20 C.F.R.
10  404.1512(a)-(b); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
11  1999).  The administrative record shows Plaintiff received medical
12  care, pain management and/or mental health counseling from providers
13  at the Wenatchee Valley Medical Clinic, Samaritan Healthcare in
14  Moses Lake, Washington, the Shepherd's Staff Foundation Medical
15  Clinic in Deer Park, Washington, the North Basin Medical Clinic in
16  Davenport, Washington, and Stevens County Counseling Services.  In
17  addition, she was examined by rheumatology specialist J. Richard
18  Newton, M.D., and psychologists Thomas McKnight, Ph.D., and John
19  McRae, Ph.D.

20       Records indicate Cole Hemmerling, M.D., treated Plaintiff at
21  Samaritan Healthcare from 1999 to 2000. (Tr. 263-310, 325.)  Dr.
22  Hemmerling diagnosed depression and possible fibromyalgia in May
23  2000; he prescribed Wellbutrin for her depression and Voltaren
24  (anti-inflammatory) for pain.  (Tr. 266-69.)  In a RFC
25  questionnaire, Dr. Hemmerling opined Plaintiff's pain would
26  interfere "often" with her attention and concentration, she could
27  perform low stress work, could sit or stand at least 6 hours, but
28

not continuously, and would require unscheduled breaks of five to ten minutes when she would need to lie down or sit quietly. He indicated her impairments would cause "good days" and "bad days," and she was likely to be absent about four times per month. (Tr. 315-20.) In October 2000, he referred Plaintiff to Dr. Newton for a rheumatology examination. (Tr. 324.)

Dr. Newton ruled out metabolic conditions with objective laboratory tests, the results of which are in the record, and diagnosed fibromyalgia. (Tr. 325, 328-32.) He recommended treatment with pain medication, muscle relaxants, sleep aides and rest. He specifically noted that the pathology was not well established and treatment was not always effective. (Tr. 325.)

In July 2001, while Plaintiff was being treated by Keith Hindman, D.O., she began into a pain management program that included exercise, manipulative therapy, diet monitoring and medication monitoring. (Tr. 335, 324-55.) In May 2002, Dr. Hindman diagnosed fibromyalgia, chronic pain syndrome, chronic fatigue (which he considered objectively verified by elevations in her Epstein-Barr virus antibodies) and adrenal exhaustion. He opined her pain management regime was helping her, but due to pain and need to rest frequently, she was unemployable. (Tr. 356.) In April 2004, Dr. Hindman noted an improvement in Plaintiff's quality of life, but opined she was unable to work on a sustained basis. (Tr. 393, 396.) His opinion is supported by clinical notes, laboratory tests and pain management reports dating from 2001 to 2005. Specifically, Dr. Hindman reported Plaintiff had ongoing depression, needed to rest frequently, and would experience increased pain with overexertion.

(Tr. 393, 406-574.)  These opinions are consistent with Dr. Hemmerling's opinions.  Plaintiff continued treatment with Dr. Hindman through March 2005.[1] (Tr. 633-709.)

In August 2000, Dr. McKnight completed a psychological evaluation and diagnosed depressive disorder with elements of anxiety.  (Tr. 362.)  He concluded Plaintiff could work full time, based on a chart review, one-time exam and testing.  (Tr. 357, 362.)

Plaintiff changed primary care providers in June 2003, when she moved to Davenport, Washington.  Rolf Panke, D.O., assessed fibromyalgia, chronic pain, chronic narcotic use and somatic dysfunction of the cervical, thoracic, lumbar spine.  (Tr. 379, 385.)  Dr. Panke recommended she continue to see Dr. Hindman for pain management.  (Tr. 777.)

In May 2004, Plaintiff was evaluated by Dr. McRae.  Based on a clinical interview and objective psychological testing, he diagnosed major depression, recurrent without psychotic features, anxiety disorder and personality disorder, nos.  (Tr. 400-01.)  He observed Plaintiff as anxious and depressed with noticeable motor slowness, although she showed good concentration.  (Tr. 399.)  He noted several times that Plaintiff's condition was slowing her down, which he indicated might have been due to medication.  (Tr. 401.)  Test results indicated severe problems with auditory recall and

---

[1]  The court takes judicial notice of Dr. Hindman's Indictment in June 2007 on federal charges.  *United States v. Hindman*, Cause No. CR-07-096-RHW (E.D. Wa.).  FED. R. CIV. P. 201.  These pending charges do not affect the court's deliberations in this civil matter.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR IMMEDIATE AWARD OF BENEFITS - 8

depression.  However, supplemental testing showed no malingering or exaggeration in visual memory.  (Tr. 400.)  Dr. McRae noted inconsistencies in her behavior on exam and information in the record.  (Tr. 399, 401.)  He concluded Plaintiff had several marked functional limitations, including her ability to tolerate the pressures and expectations of a normal work setting.  (Tr. 404.)

The record also contains detailed counseling notes from Stevens County Counseling, reflecting treatment from October 2003 until February 2005, for pain issues, depression, past trauma (including sexual abuse as a child, kidnaping and molestation when she was five, and repeated physical abuse by her first husband).  (Tr. 366-78, 575-632.)  From February 2004 to February 2005, Plaintiff's counselor observed she had good days and bad days, she was depressed and anxious, had difficulty discussing past abuse, demonstrated confusion and memory problems at times, and reported episodes when she slept all day.  (Tr. 585, 596, 602-32.)

Plaintiff was taking prescribed medication for hypothyroidism, depression, sleep disturbance, fatigue and pain over the course of her treatment.  (Tr. 240, 242, 641, 705.)  In July 2005, her medications were listed as thyroid, anti-depressants and opiate pain medication.  (Tr. 774.)  She participated consistently in pain management services, in compliance with the Washington State Department of Health Guidelines for Management of Pain, and counseling services.  (Tr. 332, 365-78, 575-632.)

Four medical experts testified over the years in this case, offering conflicting opinions regarding diagnoses and severity.  In May 2002, Glen Almquist, M.D., and orthopedic surgeon, testified.

Dr. Almquist discounted a diagnosis of fibromyalgia because Plaintiff was taking narcotic pain medication, which he considered contra-indicated, and because there was no evidence of a spinal tap. He also testified her exercise program was not sufficiently strenuous to treat fibromyalgia and relieve the attendant depression and pain. (Tr. 854.) In March, 2005, William Spence, M.D., and pulmonary specialist, testified he did not recognize fibromyalgia as a disease, but considered the condition a "chronic pain syndrome" described under Listing 12.07 (*Somatization Disorders*). (Tr. 864.) He opined Plaintiff met Listing 12.07 from the alleged date of onset, due to marked difficulties in maintaining social functioning and repeated episodes of deterioration or decompensation in work or work-like settings. (Tr. 866-67.)

Internal medicine specialist Robert Stier, M.D., testified at the June 16, 2005, hearing and concurred with Plaintiff's treating physicians' diagnoses of fibromyalgia, referencing the rheumatologist's evidence in the record that confirmed this diagnosis. (Tr. 873-74.) Regarding physical limitations, Dr. Stier opined Plaintiff did not meet the Listings, and was capable of light work with some postural limitations. Dr. Stier did not contradict Plaintiff's treating physicians' opinions that Plaintiff was unable to work on a sustained basis; rather, he deferred to Dr. Hemmerling's comment that "there was unpredictable worsening of the symptoms that might promote absenteeism" that would occur "at least four times a month." (Tr. 879-80.)

Non-examining psychologist Ronald Klein also testified at the June 16, 2005, hearing. He stated the clinical scales on

Plaintiff's psychological testing by Dr. McRae were "wildly elevated," which he interpreted as gross exaggeration of symptoms. (Tr. 887.)   He concurred with a diagnosis of depression but disagreed with the degree of severity assessed by Dr. McRae.   He concluded Plaintiff's mental functional limitations were mild and her mental impairments were non-severe.   (Tr. 765, 887, 891-92.)

In a disability proceeding, it is the role of the ALJ to resolve conflicts in medical evidence.   A treating physician's opinion is given special weight because of his or her familiarity with the claimant and her physical condition.   *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).   If the treating physician's opinion is not contradicted, it can be rejected only with "clear and convincing" reasons.   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).   If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.   A treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and supported by medically accepted diagnostic techniques unless it is rejected with "clear and convincing" reasons. *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001).

To meet this burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation of the evidence, and make findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).   The ALJ is not required to accept

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR IMMEDIATE AWARD OF BENEFITS - 11

the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. *Id.*

Courts have upheld an ALJ's decision to reject the opinion of a treating or examining physician based in part on the testimony of a non-examining medical advisor. *Lester*, 81 F.3d at 831. The testimony of a medical expert may serve as substantial evidence only when supported by other evidence in the record. *Id.* If supported by substantial evidence, the ALJ's decision must be upheld, even where the evidence is susceptible to more than one rational interpretation. *Andrews,* 53 F.3d at 1039-40.

After summarizing medical records and testimony of medical experts, the ALJ concluded that Plaintiff's only severe impairment was neck, back and hip pain. He found there was "no evidence of fibromyalgia syndrome," and that Plaintiff's depression was not a severe mental impairment. (Tr. 31-32.) These findings are not supported by substantial evidence.

### 1. Step Two: Fibromyalgia and Depression

To satisfy step two's requirement of a severe impairment, the Plaintiff must provide medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. §§ 404.1529, 416.929. However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the

statutory definition of disabled. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994). Thus, the Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be not severe *only* when evidence establishes a "slight abnormality" on an individual's ability to work. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*citing Social Security Ruling* (*SSR*) 85-28). The ALJ must consider the combined effect of all of the claimant's impairments on the ability to function, without regard to whether each alone was sufficiently severe. *See* 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991). An impairment generally is considered non-severe for purposes of step two if the degree of limitation in the three functional areas of activities of daily living, social functioning, and concentration, persistence or pace is rated as "none" or "mild" and there have been no episodes of decompensation. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154.

### a.  Fibromyalgia Syndrome

In 2004, fibromyalgia was described by the Ninth Circuit as a "poorly understood disease" because its cause is unknown, and the disease is diagnosed entirely on a patient's self-report of pain and other symptoms, and there are no laboratory tests to confirm a diagnosis. *Benecke v. Barnhart,* 379 F.3d 587, 589-90 (9th Cir. 2004); *see also Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001); *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.,* 125 F.3d 794, 796 (9th Cir. 1997). "Common

symptoms  . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Benecke*, 379 F.3d at 590.  Other Circuits also have recognized fibromyalgia as a disabling impairment even though there are no objective tests to confirm the disease or its severity.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003)*, Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

As explained by Dr. Newton in his 2000 report, "Current thinking is that fibromyalgia is a pain syndrome from muscle and tendon similar to a head ache being from the head.  It is likely, although still debated, that the underlying tendon and muscle is normal."  (Tr. 325.)  Regarding treatment, Dr. Newton stated, "Available treatments at this time do include, non-narcotic analgesics, muscle relaxants (Cyclobenzaprine or Methocarbamol), sleeping aids (Trazodone, Imipramine, Doxapin, Amitriptyline), Serotonin re-uptake inhibitors (even in the absence of depression), reassurance, rest, and exercise is, of course, encouraged."  (Id.)

Here, the record includes medical evidence that Plaintiff was diagnosed with fibromyalgia in 1999 by her treating physician and confirmed in 2000 by a rheumatology specialist.  (Tr. 250, 325.) However, the ALJ found that "both [non-examining] medical experts, Dr. Spence and Dr. Stier, testified that there are no records indicating a definitive diagnosis of fibromyalgia." (Tr. 31.)  This finding misstates the evidence.  Dr. Spence simply did not recognize fibromyalgia as a disease, stating, "My view is that fibromyalgia is another name for chronic pain syndrome," and testified the only

diagnosis he found, based on Plaintiff's symptoms, was under Listing 12.07 (*Somataform Disorders*). Significantly, he found Plaintiff met the Listing for this impairment, indicating evidence of the severity of her condition supported a finding of disability. (Tr. 864.)

Dr. Spence's formal diagnosis, which reflects the misunderstanding noted by the *Benecke* court, conflicts with the diagnosis by the examining rheumatology specialist and is not supported by other evidence in the record; therefore, it is insufficient to reject the treating and examining physicians' diagnoses of fibromyalgia. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester*, 81 F.3d 821, 830-31 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(5)(a).

Contrary to the ALJ's finding, Dr. Stier testified unequivocally that Plaintiff's symptoms met the criteria for fibromyalgia. (Tr. 874.) He explained in detail that fibromyalgia is "a diagnosis of exclusion" where no other cause for the symptoms can be identified. (Tr. 874.) The record shows that Plaintiff consistently exhibited the signs and symptoms of fibromyalgia and met the criteria of the American College of Rheumatology. (Tr. 406.) The ALJ's conclusion that there was of no evidence of fibromyalgia is not supported by substantial evidence. Because the evidence clearly indicates the symptoms of fibromyalgia caused more than a slight abnormality on Plaintiff's ability to work, the ALJ's step two finding of no evidence of fibromyalgia is reversible error. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

**b. Depression**

The ALJ also made the step two finding that Plaintiff's

depression caused no more than a *de minimis* limitation on her ability to work. (Tr. 32.) The evidence shows Plaintiff carried a diagnosis of depression throughout the record. In May of 2000, Dr. Hemmerling diagnosed Plaintiff with depression, low energy and pain and prescribed Wellbutrin. (Tr.266.) Based on interview and objective testing, examining psychologist Dr. McKnight diagnosed depressive disorder, NOS, in 2002, and in 2004, Dr. McRae diagnosed Major Depression, recurrent and anxiety disorder, nos, and post traumatic stress disorder. (Tr. 361-62, 401.) Dr. Stier testified that emotional difficulties such as depression are among the symptoms of fibromyalgia. (Tr. 875.) He noted that the mental health counselors reported "significant depression." (Tr. 891.) The ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232. The consistent diagnosis of depression by Plaintiff's treating physicians, counselors and examining psychologists is substantial evidence of a claim that is not "frivolous." *Webb*, 433 F.3d at 688. In addition, detailed records of Plaintiff's treatment with anti-depressants, beginning in 2002, and clinic notes by treating physicians, examining psychologists and mental health counselors reporting signs and symptoms of depression constitute substantial evidence that depression had more than a *de minimus* effect on Plaintiff's ability to perform work on a regular basis. *Id.* The ALJ's step two finding that her depression was not severe is error.

### 2. *Rejection of Medical Opinions*

To reach his determination that Plaintiff was not disabled, the

ALJ rejected the opinions of rheumatology specialist Dr. Newton, treating physicians Hemmerling and Hindman, and examining psychologist, Dr. McRae. (Tr. 31, 34-35.) Plaintiff argues these opinions were improperly rejected.

As discussed above, the ALJ erred in finding no evidence of fibromyalgia. Dr. Newton clearly stated: "Her diagnosis is fibromyalgia." (Tr. 325.) Medical expert Dr. Stier concurred with this diagnosis. (Tr. 874.) Dr. Newton's opinion is supported laboratory test results that ruled out metabolic diseases and a detailed report of his findings on examination, including the following positive symptoms: poor sleep pattern, frequent headaches, joint problems, chronic nausea and dry heaves, intermittent constipation and diarrhea, chronic irregular menses. (Tr. 321-31.) As a specialist, his opinions merit significant weight regarding fibromyalgia. 20 C.F.R. § 404.1527(5)(a). The ALJ's failure to give any reason for rejecting of Dr. Newton's diagnosis is legal error.

The ALJ rejected Dr. Hemmerling's assessment of Plaintiff's limitations because of a lapse in treatment records, a lack of supporting medical evidence and inconsistency with the rest of the record. (Tr. 34.) These reasons are not sufficiently specific or legitimate to reject a treating physician's opinions. *Lester*, 81 F.3d at 831. The ALJ did not explain why a lapse in treatment records would discredit a treating physician's opinion. Dr. Hemmerling's opinions are consistent with Dr. Newton's report and the opinions Dr. Hindman, who treated Plaintiff for over four years. The ALJ also discounted Dr. Hemmerling's opinions because they were

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR IMMEDIATE AWARD OF BENEFITS - 17

based on Plaintiff's subjective complaints. (Tr. 34.) As discussed below, the ALJ's credibility findings are not supported by "clear and convincing" reasons and therefore, not a basis for wholesale rejection of medical opinions. *See Jones v. Heckler,* 760 F.2d 993, 997 (9th Cir. 1985) (credibility issues cannot be used to "insulate ultimate conclusion regarding disability from review"). Finally, the ALJ cites Dr. Stier's testimony as a basis of rejection. (Tr. 34.) However, Dr. Stier specifically endorsed Dr. Hemmerling's opinion, stating the evidence indicated Plaintiff's worsening condition would cause excessive absenteeism. (Tr. 879-80.) The ALJ failed to explain why Dr. Stier's testimony that there "was no neurologic impairment or any impairment supporting absenteeism of 4 times per month" (Tr. 34), is relevant in rejecting Dr. Hemmerling's opinions regarding Plaintiff's limitations due to fibromyalgia. *See Magallanes*, 881 F.2d at 755.

The ALJ rejected Dr. McRae's opinion that Plaintiff had marked limitations in social functioning in favor of medical expert Dr. Klein testimony, reasoning that Dr. McRae's evaluation "was for DSHS purposes" which were "not as stringent as Social Security disability evaluations, and are generally . . . based on a clamant's subjective complaints." (Tr. 31.) However, the purpose for which an evaluation is obtained does not provide a legitimate reason for rejection. *Lester*, 81 F.3d at 832. The ALJ also cited examples of Plaintiff's inconsistencies in treatment as reasons for discrediting Dr. McRae's assessment. (Tr. 31.) The ALJ failed to explain how a patient's missed counseling sessions and running out of medication are legitimate reasons for rejecting a psychologist's opinions based on

1   clinical interview and objective testing.  Further, the Ninth

2   Circuit has cautioned against chastising a person with mental health

3   problems for inconsistencies in treatment.  *See e.g. Nguyen v.*

4   *Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

5        In rejecting Dr. Hindman's opinion that Plaintiff was unable to

6   work on a "reasonably continuous full time basis," the ALJ relied on

7   Dr. Klein's conclusion that Plaintiff scores indicated "gross

8   exaggeration," an interpretation of a personality testing score that

9   is unsupported by personal contact with Plaintiff or other evidence

10  from examining physicians and psychologists.  (Tr. 35, 887.)  The

11  ALJ also found Dr. Hindman's opinions were not consistent with the

12  bulk of the evidence, referencing records of ongoing treatment that

13  reflected "improvement in both subjective and objective complaints."

14  (Id.)   These are neither specific or legitimate reasons for

15  rejection.

16       The record shows that although Dr. Hindman noted improvement in

17  Plaintiff's condition with treatment, he opined she could not work

18  on a "reasonably continuous full-time basis," citing problems caused

19  by pain and her need for frequent rest.  (Tr. 356, 468, 658-59.)

20  This is consistent with Dr. Hemmerling's findings and with Dr.

21  Newton's assessment.  (Tr. 316-27.) Other evidence noted Plaintiff

22  had good days and bad days, with fluctuating pain and depressive

23  symptoms.  (Tr. 502, 605, 611, 617, 621, 641, 643.)  "Occasional

24  symptom-free periods - and even sporadic ability to work - are not

25  inconsistent with disability." *Lester*, 81 F.3d at 833.  Plaintiff's

26  reported quality of life improvement is not inconsistent with Dr.

27  Hindman's opinion regarding sustained work activity.

28

Contrary to the ALJ's finding that Dr. Hindman did not identify "trigger points," used to diagnose fibromyalgia, the record includes a June 19, 2001, examination report from Dr. Hindman documenting 17 of 18 trigger points, which verified the diagnosis consistent with the American College of Rheumatology 1990 criteria. (Tr. 406.) Dr. Stier referenced this trigger point evaluation in his testimony. (Tr. 874.) The Commissioner's findings must be based on the record in its entirety, not just "a specific quantum of supporting evidence." *De Lorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Viewing the record in its entirety, Dr. Hindman's opinions are not inconsistent with the bulk of the medical evidence.

The ALJ also relied on Dr. McKnight's single remark that "iatrogenic issues must be considered." (Tr. 35.) He suggested Dr. Hindman's opinions reflected a desire to be supportive of his patient's wishes. (Id.) This skepticism, unsupported by any evidence, is not a legitimate basis for rejecting a treating physician's opinion. *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *Lester*, 81 F.3d at 833 (treating physician's continuing relationship with a claimant renders him "especially qualified" to form an overall conclusion as to the combined impact of a patient's symptoms on his or her functional capacities); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)(treating physician's opinions entitled to special weight).

Dr. Hindman's conclusions are supported extensively by the record in its entirety, including the opinions of treating physician Dr. Hemmerling, Dr. Newton, Dr. McRae, and mental health providers. The ALJ's reasons for rejecting these medical opinions are neither

"clear and convincing" nor "specific and legitimate."

### 3. *Residual Functional Capacity*

At step four, the ALJ assessed Plaintiff's RFC and determined she was capable of performing a significant range of light work. (Tr. 38.)  Because the ALJ improperly rejected Plaintiff's treating and examining physicians' opinions regarding Plaintiff's fibromyalgia and depression, the severity of these conditions and attendant limitations, he failed to consider the impact of all impairments, alone and in combination, on Plaintiff's RFC. 20 C.F.R. §§ 404.1529 (d)(4), 416.929 (d)(4); 404.1523, 416.923. Specifically, there was a failure to include symptoms of fibromyalgia and depression, and Plaintiff's need for low stress work where she could rest frequently, and the impact of worsening symptoms that would cause absenteeism four times per month.  (Tr. 38.)  Having failed to include all limitations in his RFC findings, the ALJ's step four and step five evaluations are not supported by substantial evidence.  *Embrey*, 849 F.2d at 422.

### B. Credibility

A claimant's credibility is an appropriate factor considered in the evaluation of medical evidence. *Webb*, 433 F.3d at 688.  Because the diagnosis of fibromyalgia depends primarily on a claimant's self report, Plaintiff's credibility is a critical issue.  On review, the court reviews the Commissioner's determinations *de novo*. *McNatt v. Apfel*, 201 F.3d at 1087.  In *Thomas,* 278 F.3d at 958-959, the court held in assessing credibility, the ALJ may consider the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness, inconsistencies either in her

allegations of limitations or between her statements and conduct, her daily activities and work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *See also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *Morgan*, 169 F.3d at 600. If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms. *Reddick*, 157 F.3d at 722.

Here, there is no evidence of malingering. The ALJ found Plaintiff's subjective complaints regarding her limitations were less than credible, reasoning that "the record does not contain objective evidence to support" her claimed limitations or symptoms. (Tr. 33.) As discussed above, Plaintiff's testimony was founded upon objective medical evidence that established the existence fibromyalgia, a condition that causes pain, fatigue and depression. Plaintiff was assessed by a specialist and met the criteria for fibromyalgia established by the American College of Rheumatology. Plaintiff's complaints, which Dr. Spence observed had been present since her alleged date of onset (*see* Tr. 867), are consistent with a diagnosis of fibromyalgia. The ALJ also found Plaintiff's ability to take care of her child, her home, walk to the store (three

blocks), and participate in family activities inconsistent with her reported level of pain and allegations of disability. (Tr. 33, 234.) A claimant does not have to "vegetate in a dark room" to be considered disabled. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The Ninth Circuit has recognized that a claimant's attempt to lead a normal life in the face of her limitations should not be used against her in assessing credibility. *Id.* Plaintiff testified that she received help from her family and spouse in her daily activities, and she did her tasks a little at a time. (Tr. 232, 917.) Plaintiff's efforts to raise her child and keep a home at her own pace, and with the help of her family, do not translate into an ability to sustain work activities on a regular basis. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (home activities not easily transferable to the workplace where medication and periodic rest may be impossible).

The ALJ also reasoned that Plaintiff exhibited exaggerated behavior in psychological testing, citing medical expert Dr. Klein's conclusion that Plaintiff's psychological test results were inconsistent with other medical evidence and self report. (Tr. 33, 888-89.) Although Dr. Klein interpreted one scale on the personality test results as indicating gross exaggeration, the record contains no evidence that either her examining psychologist or treating physicians discounted her credibility. Further, Dr. Klein acknowledged that the physicians who actually had extended contact with Plaintiff did not report concerns that she was exaggerating. (Tr. 891.) Likewise, there is no indication in mental health records that Plaintiff's credibility was questioned.

As a non-examining psychologist, Dr. Klein's conflicting interpretation of one segment of one test is given less weight than the assessments of examining and treating physicians. 20 C.F.R. §404.1527(d)(2). Therefore, this reason is not sufficiently "clear and convincing" to discredit Plaintiff's testimony.

Contrary to the ALJ's credibility findings, conservative treatment was ongoing and was consistent with the treating doctor's recommendations and her pain management regime. She engaged in exercise, mental health therapy as well as ongoing manipulations for her rib problems. (*See e.g.*, Tr. 332-48, 743-48.) The ALJ referenced the use of manipulation and its benefits in his decision. (Tr. 31, 875.) The record also indicates Plaintiff was worried her prescription pain medication was not good for her and tended to under-medicate; she was worried she would be perceived as narcotic addicted. (Tr. 366.) Further, a variety of mental health matters were addressed in the course of her therapy, including post-traumatic stress, and her counselors consistently observed her to be depressed and needing anti-depressants. Mental health providers noted Plaintiff had fluctuating mood and energy levels, confirming Plaintiff's allegations that she had good days and bad days. (Tr. 585, 596, 602-32.) The record in its entirety does not support the ALJ's finding that Plaintiff is not credible.

## C. Remedy

There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinion of treating or examining physicians. The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Benecke v.*

1   *Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *see also Lester,* 81 F.3d

2   at 834; *Smolen v. Chater,* 80 F.3d 1273, 1291-92 (9th Cir. 1996);

3   *Pitzer* v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v.*

4   *Bowen*, 879 F.2d 498, 502 (9th Cir. 1989).   Under the alternate

5   approach found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir.

6   1989), a court may remand to allow the ALJ to provide the requisite

7   specific and legitimate reasons for disregarding the opinion.  *See*

8   *also Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (*citing*

9   *McAllister*).   The *McAllister* approach appears to be disfavored where

10  the ALJ fails to provide any reasons for discrediting a medical

11  opinion.  *See Pitzer*, *supra*; *Winans v. Bowen*, 853 F.2d 643 (9th Cir.

12  1987).

13      Case law requires an immediate award of benefits when:

14      (1) the ALJ has failed to provide legally sufficient
        reasons for rejecting [a medical opinion], (2) there are

15      no outstanding issues that must be resolved before a
        determination of disability can be made, and (3) it is

16      clear from the record that the ALJ would be required to
        find the claimant disabled were such evidence credited.

17

18  *Harman*, 211 F.3d at 1178 (*citing Smolen*, 80 F.3d at 1292).

19      Improperly rejected claimant testimony is also credited as

20  true.  *Lester*, 81 F.3d at 834; *Varney v. Secretary of Health and*

21  *Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988)(*Varney II*).  The

22  ALJ  failed  to  consider  Plaintiff's  medically  established

23  fibromyalgia and depression alone and in combination, and failed to

24  include credited limitations in his hypothetical question.   When

25  presented with the improperly discredited limitation of absenteeism,

26  the vocational expert testified missing work four times per month

27  would preclude regular employment.  (Tr. 879-80.)  Because this

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR IMMEDIATE AWARD OF BENEFITS - 25

testimony established Plaintiff's inability to work, there is no utility to further proceedings. *Harman*, 211 F.3d at 1180; *Lewin v. Schweiker*, 654 F.2d 631 (9th Cir. 1981) (remand for additional proceedings would simply delay receipt of benefits).

The delay in Plaintiff's disability proceedings, which started in 1999, has been severe; the case has been remanded two times by the agency and heard by two ALJs at five hearings. Further, the treating physicians' opinions are consistent and support Plaintiff's allegations regarding her limitations and pain. Her complaints of pain and fatigue are clearly associated with her diagnosed fibromyalgia and depression. Crediting Plaintiff's improperly rejected testimony and statements in treatment records as true, the onset date is established as alleged. *See e.g. Hammock*, 879 F.2d at 503; *Varney II*, 859 F.2d at 1401.

The record is fully developed and there are no other issues to be resolved; no useful purpose would be served by further administrative proceedings. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13 )** is **GRANTED** and this matter is remanded to the Commissioner for an immediate award of benefits.

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED;**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR IMMEDIATE AWARD OF BENEFITS - 26

1    shall be entered for Plaintiff and the file shall be **CLOSED**.

2        DATED July 23, 2007.

3

4                        S/ CYNTHIA IMBROGNO
                  UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR IMMEDIATE AWARD OF BENEFITS - 27